**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

DAVID ANDERSON                                                                              PLAINTIFF

v.                                                         No. 2:12CV00184 JLH

CITY OF HELENA-WEST HELENA;
and ULESS WALLACE, individually
and as Police Chief                                                     DEFENDANTS

**OPINION AND ORDER**

David Anderson brings this action under 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments against the City of Helena-West Helena, Arkansas, and Uless Wallace, individually and in his official capacity as the chief of police. Anderson argues that he was subjected to false arrest, cruel and unusual punishment, and the taking of property. The defendants have filed a motion for summary judgment. For the reasons explained below, the motion is granted.

**I.**

On November 4, 2011, Officers Cortez Bowers and Travis Wallace of the Helena-West Helena Police Department observed Anderson pull up to a four-way intersection, turn toward the right, hesitate in the intersection while waiting for an oncoming car to pass, and then continue his right turn while moving across the oncoming left lane and up to a mailbox on the left side of the road. Bowers conducted a traffic stop of Anderson's vehicle. Bowers requested Anderson's license and registration, walked to his patrol car, and then returned to tell Anderson that he "might have to check [him] for dope." Document #29-1 at 16. Anderson was "kind of in a hurry" on his way to pick up some individuals from Memphis, *id.* at 18, but Bowers told Anderson, "You're going to have to just sit there." *Id.* Anderson opened the door to his vehicle and turned around. Bowers then instructed him to get back in the vehicle. *Id.* Anderson grew impatient and said, "Man, why don't you go on

and write me a ticket?" *Id.* According to Anderson, "That's when everything went haywire." *Id.* What took place next is unclear, but a heated conversation took place, and ultimately Bowers placed Anderson under arrest for disorderly conduct and failure to obey a traffic device. Anderson was searched, transported to the Helena Police Department, and placed in a holding cell around 3:45 p.m. A little more than 90 minutes later, Anderson was released on bail. Anderson's vehicle was towed to a storage facility.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## III.

Anderson argues that Bowers subjected him to a false arrest, in violation of the Fourth Amendment. However, Anderson does not assert a claim against Bowers. Rather, Anderson has named as defendants only Wallace—the chief of police—and the City of Helena-West Helena. As Bowers' supervisor, "Chief [Wallace] can be liable for Officer [Bowers'] constitutional violation only if [Wallace] directly participated in the constitutional violation or if his failure to train or supervise the offending actor caused the deprivation." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quotation and citation omitted). "Section 1983 liability cannot attach to a supervisor merely because

a subordinate violated someone's constitutional rights." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197, 1202, 103 L. Ed. 2d 412 (1989) ("*Respondeat Superior* or vicarious liability will not attach under § 1983.")). Anderson does not allege that Wallace directly participated in his traffic stop and arrest, but he does argue that Wallace failed to train or supervise Bowers.

> For Chief [Wallace] to have violated [Anderson's] constitutional rights by failing to supervise Officer [Bowers], it must be shown that Chief [Wallace]:
> (1) Received notice of a pattern of unconstitutional acts committed by subordinates;
> (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts;
> (3) Failed to take sufficient remedial action; and
> (4) That such failure proximately caused injury to [Anderson].

*Id.* Anderson argues that Wallace was aware that Bowers was the subject of many complaints, yet Wallace allowed Bowers to continue his regular job duties. Anderson points to the following portion of Wallace's deposition testimony:

> Q   Were you advised that Cortez Bowers had ever had any disciplinary issues prior to the time you became chief of police?
> A   Yes, sir.
> Q   Do you recall if there was one or two or several?
> A   Several
> Q   And when you did your evaluation of Cortez Bowers, what conclusion did you come to regarding him as a police officer?
> A   When I looked at a lot of the merits and when I sat down and talked to him and his lieutenant, when there was so many that voiced concerns, I talked to him and I told him he had a great instinct as far as a policeman, great motivation to do the job, a little bit over aggressive on small things.
> Once he'd get a head of steam, he doesn't know how to tone down. Sometimes he would escalate a situation instead of de-escalate it.
> I told him there was some training and some counseling and some coaching just on his coping skills that would help curb this.
> I think on one of his coaching sessions I told him, I said, "I think you've got a good future at this, you've just got to tone down on certain things."

Document #29-3 at 11-12.  Viewing this testimony in the light most favorable to Anderson, it falls short of showing a genuine issue for trial on the elements of his failure-to-train claim.

Anderson's remaining claims assert municipal liability against the City of Helena-West Helena. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985) (a claim against a public servant in his official capacity is a claim against the entity that he represents). Anderson argues, first, that the City has a custom of charging citizens with disorderly conduct and resisting arrest even though they had not done so.  Second, he argues that he was subjected to cruel and unusual punishment pursuant to the City's policies, in violation of the Eighth Amendment.  And third, he argues that he suffered a taking of property pursuant to the City's policies, in violation of the Fourth Amendment.  "[I]n order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 799 (8th Cir. 2013).  Generally, there can be no finding of municipal liability on a plaintiff's allegations that he was subjected to a false arrest, cruel and unusual punishment, or taking of property unless the individual employee is found liable. *McKenney v. Harrison*, 635 F.3d 354, 361 (8th Cir. 2011); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007).  Here, Anderson has not named as a defendant any individual who could be liable on his claims.  The officer whom he contends violated his constitutional rights is not a defendant.  The parties have not cited a case in which a plaintiff seeks to hold a municipality liable for a constitutional wrong committed by an individual municipal employee without naming that employee as a defendant. The cases are clear that where the individual defendant is named as a defendant and is exonerated, the municipality cannot be liable.  As noted, this case presents the unusual circumstance of a plaintiff seeking to hold a

municipality liable for a constitutional wrong committed by an individual employee without seeking to hold the individual employee liable.

Even if an individual were liable for Anderson's injuries, Anderson's claims against the City could not otherwise survive summary judgment. Anderson argues that the Helena-West Helena police department had a custom of charging citizens with disorderly conduct and resisting arrest even though they had not done so. Anderson offers a resignation letter written by a former Helena-West Helena police officer, Timothy Fugate, as well as a video of Bowers speaking at a city council meeting, to show that Wallace instructed officers to charge citizens with these crimes. However, the resignation letter and video are inadmissible hearsay that cannot be used to defeat summary judgment. Fed. R. Evid. 801(a) and 802; Fed. R. Civ. P. 56(c).

Anderson does not allege which officers subjected him to cruel and unusual punishment or taking of property. For his Eighth Amendment claim, Anderson stated in deposition testimony, "The injuries that I'm talking about are nothing but I could not get my medication, I was denied the right to urinate." Document #29-1 at 22. Anderson admitted the defendant's following statement of undisputed material fact: "Mr Anderson estimates that he was taken to the holding cell around 03:45 and kept there until 05:23, just a little over one and a half hours. At that time, Mr. Anderson was bailed out by his wife and immediately left." Document #30 at 5 (citations omitted).

> "To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." *Roberson v. Bradshaw,* 198 F.3d 645, 647 (8th Cir.1999). Deliberate indifference is equivalent to the criminal law standard of recklessness—"a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir. 2004)[.]

5

*Hartsfield v. Colburn*, 491 F.3d 394, 396-97 (8th Cir. 2007). Anderson does not argue that during the 90 or so minutes that he was incarcerated that he suffered from an objectively serious medical need, that officials of the facility in which he was incarcerated knew of that need, or that officials were deliberately indifferent to that need. Furthermore, even viewing Anderson's allegation that he was "denied the right to urinate" in the light most favorable to him, this allegation does not show a genuine issue of material fact as to whether he was deprived of "the 'minimal civilized measure of life's necessities.'" *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Consequently, these claims would all fail on the merits.

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is granted. Document #21.

IT IS SO ORDERED this 6th day of March, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE